[L. A. No. 1346. · Department Two.—September 6, 1905.]

## I. W. HELLMAN, Respondent, v. CITY OF LOS ANGELES, Appellant.

Taxation—Illegal Municipal Taxes—Protest—Recovery Back—Municipal Charter—Applicability of Code Provisions.—Where a municipal charter provided that the mode and manner of collecting municipal taxes should be the same as that of the collection of state and county taxes, section 3819 of the Political Code, making the payment of illegal taxes under protest involuntary and directing that they may be recovered back, though enacted subsequent to the charter, is applicable thereunder, especially where the municipality by valid ordinance has adopted its provisions; and illegal municipal taxes paid under protest in such municipality may be recovered back.

Id.—Void Levy—Non-Existent Bonds.—A levy of municipal taxes to pay municipal bonds which have no existence is void.

Id. — Description of Bonds — Materiality — False Description in Ordinance not Correctable.—Where bonds of a specific kind were described in the ordinance making the levy as being bonds of a previous year, in which no such bonds were issued, the description is material, and the levy is void; and the ordinance is not correctable by averment that such bonds were issued of a date ten years previous to the date described in the levy.

APPEAL from a judgment of the Superior Court of Los Angeles County. M. T. Allen, Judge.

The facts are stated in the opinion of the court.

W. B. Mathews, for Appellant.

Graves, O'Melveny & Shankland, for Respondent.

HENSHAW, J.—Plaintiff brought this action to recover from the city of Los Angeles the sum of $479.60, with interest, on account of taxes paid by him to the city under protest, which taxes he claims were illegal and void. In September, 1900, the council of the city of Los Angeles passed an ordinance fixing the tax levy for municipal purposes for the year 1900-1901. This tax levy embraced the following items:—

|  | Cents. |
|---|---|
| For general public school bonds (1899) | 06.40 |
| For waterworks bonds (1899) | 00.60 |
| For public school improvement bonds (1899) | 02.36 |

Plaintiff was the owner of property in the city of Los Angeles subject to taxation, and paid the taxes for these three items, accompanying his payment with a written protest. The facts being matters of record, there was no dispute over them, and the trial was had substantially to determine the conclusions of law which should be drawn from these facts. The court adjudged the items above set forth to be illegal and void, and rendered its judgment accordingly. The city of Los Angeles appeals.

The city first contends that the complaint does not state a cause of action, in failing to show that the taxes sought to be recovered were paid involuntarily and under protest, contending that the payment was a voluntary payment under the authority of *Maxwell* v. *San Luis Obispo,* 71 Cal. 466, [12 Pac. 484]; *Bank of Santa Rosa* v. *Chalfant,* 52 Cal. 170; and *Phelan* v. *San Francisco,* 120 Cal. 1, [52 Pac. 38]. We think, however, that this contention cannot be sustained. Under the peculiar condition of the revenue law of the city of Los Angeles the cases above cited are not applicable to the question involved. The Political Code, part III, title 9, is entitled "Revenue," and contains the assessment and tax scheme of the state. Chapters seven and eight of that title deal with

the collection of property taxes, and section 3819 is one of the sections of these chapters. In 1895 the legislature, revising the subject of the revenue and taxes of the state (Stats. 1895, p. 335), amended section 3819 of the Political Code, providing for the payment of taxes under protest to read, "and when so paid under protest, the payment shall in no case be regarded as voluntary payment," and in case of suit may be "recovered back." The charter of the city of Los Angeles, in section 46, declares: "The mode and manner of collecting such municipal taxes . . . shall substantially be the same as the mode and manner . . . for the collecting of state and county taxes." (Charter of Los Angeles, Stats. 1889, p. 471.) It is quite plain that section 3819, found in chapter seven of the Political Code, under the title of "Collection of Property Taxes," is a part of the "mode and manner" of collecting state and county taxes, and is none the less a part of that mode and manner in that it deals with the right of the taxpayer to pay under protest. It would be absurd to say that the mode and manner of collecting taxes was limited solely to the right of the state and its tax-collectors, and had reference only to the duties of the taxpayer, and no pertinency whatever to the taxpayer's correlative rights. It is a provision definitely declaring a certain mode and manner in which the taxpayer may pay his taxes and preserve his rights in case the assessment and levy should be found void. The statute is in derogation of the general common-law rule as to voluntary payments, and is befitting to this more enlightened age. Nor can the argument of appellant that, as section 46 of the charter of Los Angeles went into effect before the amendment of section 3819 in 1905, therefore the amendment of section 3819 should not be held to apply in the collection of municipal taxes, be accorded much weight,—first, because the language of the charter of Los Angeles is general, and does not limit the mode and manner of collecting municipal taxes to the then existing mode and manner of collecting state and county taxes; and second, because the charter of Los Angeles prescribes that the mode and manner of collecting municipal taxes shall be substantially the same as the mode and manner for the collection of state and county taxes, and accordingly the council of Los Angeles, acting within the scope of the power and authority vested in them by section 46

of their charter, and evidently to set at rest any question that might exist upon this subject, by ordinance No. 2848, new series, section 55, enacted and adopted section 3819 of the Political Code in the following language: "And when so paid under protest the payment shall in no case be regarded as voluntary, and such owner may at any time within six months after such payment, bring an action against the city . . . to recover back the taxes so paid under protest." Plaintiff's action was brought within the time prescribed, and sufficiently states a cause of action.

Of the three contested items, the second is for taxes on waterworks bonds. The complaint alleged that no waterworks bonds had been issued. The answer raised no issue on that allegation, and the agreed statement upon which trial was had recited a judicial determination in *Barrows* v. *City of Los Angeles*, "whereby it was adjudged that the proceedings taken at the instance of the council of the city of Los Angeles, with reference to the issue of the bonds known as the waterworks bonds (1889) . . . were null and void." No other evidence was offered on this item, and no specification is made against the judgment of the court below as to the item, and upon the evidence under the stipulation the judgment was correct. The first item is for general public school bonds (1889), $329.93. As to this the complaint contains the same allegation, and no issue was raised by the answer, and in the agreed statement there is a recital of an adjudication of the invalidity of this pretended bond issue in the judgment of the *City of Los Angeles* v. *Hance*, 130 Cal. 279, [62 Pac. 484]. There was thus sufficient evidence before the court upon this item, and the judgment in regard to it was correct. The last item, for public school-improvement bonds (1889), is the one most seriously contested. The complaint alleged that no such bonds existed. The answer admitted that no such bonds existed of the year 1899, but alleged that there did exist bonds of the year 1889. The agreed stipulation shows that the tax levy was for the public school improvement bonds of the year 1899, and "that at the time of said levy there had not been voted, authorized or issued any bonds entitled public school Improvement Bonds 1899." There were existing and outstanding bonds of the city of Los Angeles known and designated as public school improvement bonds, 1889. The point

in controversy turns upon this variance. In the court below plaintiff admitted the truth of the facts set up in the answer, subject, however, to his objection to the admissibility of such facts, as seeking to vary by parol the terms of an ordinance, which not only was a written instrument, but proceedings under which were, as to the plaintiff taxpayer, *in invitum,* and, therefore, the more subject to strict construction. The trial court held with the respondent upon this contention, and, finding that there were no public school improvement bonds of 1899 to which the levy could be addressed, declared it to be void. In this we think the court was correct. Under the charter of Los Angeles the tax ordinance was necessary. The city auditor was required to make an estimate for each fund (charter of Los Angeles, Stats. 1889, p. 462, sec. 43). The city council in its ordinance was required to make a levy for each fund (Ordinance No. 2848, New Series, sec. 23; Pol. Code, secs. 3714, 3737). The situation, therefore, presented is that, with the requirement that the estimate and levy must be made for each fund, there was an estimate and levy made for a non-existing fund and to meet a non-existing liability, for no presumption of intention that is not distinctly expressed in a tax ordinance can be indulged by the court, and every construction must be in favor of the taxpayer and against the government. (*Merced Co.* v. *Helm,* 102 Cal. 159, [36 Pac. 399].) The designation 1899 cannot be regarded as surplusage. It was essential within the requirements of the charter and of the code above cited in particularizing the fund. Not only can the figures 1899 not be regarded as surplusage, but their elimination by a court would be equally unwarranted. It would leave the levy without proper description, and compel the court to assume and usurp the power of the executive department of the government by deciding whether there were any other bonds to which the levy could apply, or what, in any event, should become of the money. As said in *Clunie* v. *Siebe,* 112 Cal. 597, [44 Pac. 1064], "The assessment of property for the purposes of taxation is a function of the executive department of the government, but the proceeding contemplated by the petition herein would transfer that function to the judicial department of the government." Moreover, by eliminating 1899, the reference to any particular bonds, and, in consequence, to any par-

CXLVII. Cal.—42

ticular fund, would be so indefinite, ambiguous, and uncertain as itself to render the assessment void. (*Falkner* v. *Hunt,* 16 Cal. 167; *Harvey* v. *Meyer,* 117 Cal. 62, [48 Pac. 1014]; *People* v. *Flint,* 39 Cal. 670; *Keane* v. *Cannovan,* 21 Cal. 302, [82 Am. Dec. 738]; *Kelsey* v. *Abbott,* 13 Cal. 609; *Maxcy* v. *Clabaugh,* 1 Gilm. 26.) It follows therefore that it would be an unwarranted departure from the accepted rules of interpretation, and an infringement upon the taxpayer's well-settled rights to a strict construction of the levies and assessments under which he is compelled to pay his taxes, to consider the ordinance levying the tax otherwise than is plainly imported from its reading. This case is not at all like that presented in *Burch* v. *Newbury,* 10 N. Y. 374, where, in the construction of a statute, the supreme court of New York reiterated the well-accepted rule that where words or phrases are obscure or doubtful, the intention of the legislature is to be resorted to in order to find the meaning. There is no ambiguity, nor are there words of doubtful import upon the face of this levy. Equally dissimilar is this case from that of *Burlington etc. R. R. Co.* v. *Cass County,* 16 Neb. 136, [19 N. W. 700], relied upon by appellant. There the objection made to a tax was that its levy was for "the insane fund." The answer showed that it was levied for the purpose of paying the indebtedness of the county to the state, caring for the insane at the hospital, according to the certificate of the auditor. Here the court pointed out that the law did not designate any name for the fund to which this tax would belong, and said: "The mere fact that this tax was named or designated the 'insane fund' does not change its character or vitiate the tax; and especially is this true in a case like this, where the law does not attach to it any name." But in this case a specific name has been given, and the appellant city is not willing to stand upon the sufficiency of the description, but asks that the name be so changed as to make the levy apply to a fund entirely different from that which was expressly designated. The inapplicability of this case, therefore, becomes apparent.

For the foregoing reasons the judgment appealed from is affirmed.

McFarland, J., and Lorigan, J., concurred.