Filed 6/6/11

# IN THE SUPREME COURT OF CALIFORNIA

FRANCHISE TAX BOARD,

    Petitioner,

    v.

THE SUPERIOR COURT OF THE CITY
AND COUNTY OF SAN FRANCISCO,

    Respondent;

TOM GONZALES, as Personal
    Representative, etc.,
    Real Party in Interest
    and Respondent.

S176943

Ct.App. 1/5 A122723

San Francisco City and County
Super. Ct. No. CGC-06-454297

Does a taxpayer have the right to a jury trial in an action for a refund of state income taxes? The Court of Appeal said yes, reasoning that the gist of such an action is legal and therefore a jury trial is guaranteed by the state Constitution. We reverse.

The facts are undisputed, and may briefly be stated. Real party in interest Tom Gonzales, as personal representative of his son's estate, filed a complaint in 2006 seeking a refund of state personal income taxes for the years 2000 and 2001. Gonzales alleged that the estate had paid over $15 million as part of a tax amnesty program, reserving the right to seek a refund. He demanded a jury trial. The trial court denied a motion by defendant Franchise Tax Board to strike the jury demand. On the Board's application for writ relief, the Court of Appeal issued an

order to show cause. After thorough consideration of the parties' arguments, the court declined to disturb the trial court's ruling as to the refund action, deciding as a matter of first impression that there is a state constitutional right to a jury trial in an action for a refund of state income taxes.[1] We granted the Board's petition for review.

DISCUSSION

The statutes governing suits for income tax refunds from the state are silent on the right to a jury trial. (Rev. & Tax. Code, § 19381 et seq.)[2] Gonzales relies on article I, section 16 of the California Constitution, which declares that "[t]rial by jury is an inviolate right and shall be secured to all . . . ." It is settled that the state constitutional right to a jury trial "is the right as it existed at common law in 1850, when the Constitution was first adopted, 'and what that right is, is a purely historical question, a fact which is to be ascertained like any other social, political or legal fact.' [Citations.]" (*C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 8; see also *Corder v. Corder* (2007) 41 Cal.4th 644, 656, fn. 7;

---

[1]    The court granted the petition insofar as the trial court permitted a jury trial on the Board's cross-complaint seeking to recover a penalty from the estate. Gonzales does not challenge that ruling.

[2]    Revenue and Taxation Code section 19382 provides: "Except as provided in Section 19385, after payment of the tax and denial by the Franchise Tax Board of a claim for refund, any taxpayer claiming that the tax computed and assessed is void in whole or in part may bring an action, upon the grounds set forth in that claim for refund, against the Franchise Tax Board for the recovery of the whole or any part of the amount paid."

Gonzales filed his complaint under Revenue and Taxation Code section 19385, which provides that if the Board fails to mail a notice of action on a refund claim within six months, a taxpayer may consider the claim disallowed and sue for a refund.

*Crouchman v. Superior Court* (1988) 45 Cal.3d 1167, 1173-1174; *People v. One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 286-287.)

"As a general proposition, '[T]he jury trial is a matter of right in a civil action at law, but not in equity.' [Citations.]" (*C & K Engineering Contractors v. Amber Steel Co.*, *supra*, 23 Cal.3d at p. 8.) "[I]f the action is essentially one in equity and the relief sought 'depends upon the application of equitable doctrines,' the parties are not entitled to a jury trial." (*Id.* at p. 9.) And "if a proceeding otherwise identifiable in some sense as a 'civil action at law' did not entail a right to jury trial under the common law of 1850, then the modern California counterpart of that proceeding will not entail a *constitutional* right to trial by jury. [Citations.]" (*Crouchman v. Superior Court*, *supra*, 45 Cal.3d at p. 1174.)[3]

We have explained that if the action deals with " 'ordinary common-law rights cognizable in courts of law, it is to that extent an action at law. In determining whether the action was one triable by a jury at common law, the court is not bound by the form of the action but rather by the nature of the rights involved and the facts of the particular case — the gist of the action. A jury trial must be granted where the gist of the action is legal, where the action is in reality cognizable at law. [¶] . . . The constitutional right of trial by jury is not to be narrowly construed. It is not limited strictly to those cases in which it existed

---

[3] Code of Civil Procedure section 592 states: "In actions for the recovery of specific, real, or personal property, with or without damages, or for money claimed as due upon contract, or as damages for breach of contract, or for injuries, an issue of fact must be tried by a jury . . . ." This statutory jury trial provision, like our state constitutional guarantee, "is historically based and does not expand the jury trial right beyond its common law scope. [Citations.] Accordingly, section 592 provides no independent basis for a right to a jury . . . ." (*Corder v. Corder*, *supra*, 41 Cal.4th at p. 656.)

3

before the adoption of the Constitution but is extended to cases of like nature as may afterwards arise.  It embraces cases of the same class thereafter arising.' "  (*People v. One 1941 Chevrolet Coupe*, *supra*, 37 Cal.2d at pp. 299-300, fn. omitted.)

Here, the Court of Appeal reasoned that the "gist" of a claim for a tax refund is legal.  The plaintiff seeks monetary relief, and the proceeding is "in the nature of an action in assumpsit" (*Northrop Aircraft v. Cal. Emp. etc. Com.* (1948) 32 Cal.2d 872, 879), a common law form of action at law (*Jogani v. Superior Court* (2008) 165 Cal.App.4th 901, 906-907).  The court was persuaded by the rationale of *United States v. State of N. M.* (10th Cir. 1981) 642 F.2d 397 (*New Mexico*), where the Tenth Circuit Court of Appeals observed that jury trials were available at common law in actions against tax *collectors* to recover illegally exacted taxes.  Accordingly, the *New Mexico* court concluded that "the right of a taxpayer to a jury trial in refund cases is rooted in the common law and was preserved by the Seventh Amendment."  (*Id.* at p. 401; see also *Department of Revenue v. Printing House* (Fla. 1994) 644 So.2d 498, 500 [following *New Mexico* and recognizing state constitutional right to jury trial in statutory tax refund actions].)

The Court of Appeal's reasoning is not without support.  A tax refund action is legal rather than equitable in character.  And in England and early America, common law actions for refunds were brought against officers who

4

collected taxes and duties, though in some cases recovery was limited to amounts assessed without jurisdiction and did not extend to overcharges.[4]

However, it is a general proposition, not an absolute rule, that the right to a jury trial attaches when the "gist" of the action is legal. (*C & K Engineering Contractors v. Amber Steel Co.*, *supra*, 23 Cal.3d at p. 8.) The "gist" test does not apply in administrative proceedings. (*McHugh v. Santa Monica Rent Control Bd.* (1989) 49 Cal.3d 348, 379-380.) We have also held that the legal nature of small claims actions does not bring with it the right to a jury trial. (*Crouchman v. Superior Court*, *supra*, 45 Cal.3d at p. 1175.) And in *Sonleitner v. Superior Court* (1958) 158 Cal.App.2d 258, the court ruled that a jury trial was not available in a tax collection proceeding, even though the proceeding was statutorily designated "an action at law." Observing that the statutory proceeding was not equivalent to a common law debt collection action (*id*. at p. 261), the *Sonleitner* court noted that "the test is whether the gist of the action is legal *in a common law context*" (*id*. at p. 262, italics added). We look to whether a claim arising under a modern statute is "of like nature" or "of the same class" as a common law right of action. (*People v. One 1941 Chevrolet Coupe*, *supra*, 37 Cal.2d at p. 300.)

---

[4] See, e.g., *Whitbread v. Brooksbank* (K.B. 1774) 98 Eng. Rep. 970, 972 (no action for overpayment); *Camplin v. Bullman* (Exch. 1761) 145 Eng. Rep. 755, 756; *Stevenson v. Mortimer* (K.B. 1778) 98 Eng. Rep. 1372, 1373 (refund of overpayment permitted); *Elliott v. Swartwout* (1836) 35 U.S. 137, 156-158; *Hearsey v. Pruyn* (N.Y. Sup.Ct. 1810) 7 Johns. 179, 182; *Torrey v. Millbury* (1838) 38 Mass. 64, 70; Kirst, *Administrative Penalties and the Civil Jury: The Supreme Court's Assault on the Seventh Amendment* (1978) 126 U.Pa. L.Rev. 1281, 1313 et seq.; Plumb, *Tax Refund Suits Against Collectors of Internal Revenue* (1947) 60 Harv. L.Rev. 685, footnote 2 (Plumb).

Notwithstanding the Tenth Circuit's opinion in *New Mexico*, *supra*, 642 F.2d at pages 400-401, statutory actions for tax refunds from the government have generally *not* been placed in the same class as the common law right of action against individual tax collectors. Most courts have viewed actions for a refund from the government as new and distinct proceedings, subject to such conditions as the legislative branch sees fit to impose. At common law, sovereign immunity barred actions against the government, by way of jury trial or otherwise. (*People v. Superior Court (Pierpont)* (1947) 29 Cal.2d 754, 756; *Galloway v. United States* (1943) 319 U.S. 372, 388; 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, §§ 203, 210, pp. 343-344, 354-355.) The right to a jury trial provided by the Seventh Amendment to the United States Constitution does not apply in statutory actions against the federal government. (*Lehman v. Nakshian* (1981) 453 U.S. 156, 160-161.)[5] That rule applies in tax refund actions. (*Wickwire v. Reinecke* (1927) 275 U.S. 101, 105 (*Wickwire*).[6] Several states have followed the federal

---

[5] "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise reexamined in any court of the United States, than according to the rules of the common law." (U.S. Const., 7th Amend.) "Like the state constitutional provision, the Seventh Amendment merely 'preserves' the common law right to jury trial and does not create a new or broader right." (*McHugh v. Santa Monica Rent Control Bd.* (1989) 49 Cal.3d 348, 381, fn. 54; see *Monterey v. Del Monte Dunes at Monterey, Ltd.* (1999) 526 U.S. 687, 708-709; *Granfinanciera, S. A. v. Nordberg* (1989) 492 U.S. 33, 42; *DiPirro v. Bondo Corp.* (2007) 153 Cal.App.4th 150, 180 [citing federal cases]; but see *Jehl v. Southern Pac. Co.* (1967) 66 Cal.2d 821, 827.)

[6] The *New Mexico* opinion did not acknowledge the contrary rule stated in *Wickwire*, *supra*, 275 U.S. at page 105, to the effect that the right to a jury trial in a tax refund case "is not to be found in the Seventh Amendment." The Court of Appeal below suggested this statement in *Wickwire* was dictum. However, the *Wickwire* rule is settled law, and consistent with the general rule that the Seventh

(*footnote continued on next page*)

example and refused to recognize a state constitutional right to a jury trial in tax refund cases.  (*Coeur D'Alene Lakeshore v. Kootenai County* (Idaho 1983) 661 P.2d 756, 762; *C. W. Matthews Contracting Co. v. S. C. Tax Comn.* (S.C. 1976) 230 S.E.2d 223, 226; *Dexter Horton Bldg. Co. v. King County* (Wn. 1941) 116 P.2d 507, 511; see also *Jernigan v. Jackson* (Tenn. 1986) 704 S.W.2d 308, 309 [rejecting claim of right to jury trial without reference to federal law].)

Before we examine California's experience with common law and statutory refund actions, we briefly review the development of federal procedure in this area, which shows that the common law right of action was effectively superseded by statute well before California's statehood.  The United States Supreme Court first recognized the right to seek refunds from tax collectors in 1836, when it ruled that collectors of customs duties were personally liable for illegal assessments even if they had transferred the money to the treasury.  (*Elliott v. Swartwout*,

---

(*footnote continued from previous page*)

Amendment has no application in suits against the federal government.  (See *Phillips v. Commissioner* (1931) 283 U.S. 589, 599, fn. 9; *Lehman v. Nakshian*, *supra*, 453 U.S. at pp. 160-161; 20A Federal Procedure L.Ed. (2009) § 48:1395, p. 426; 8 Moore's Federal Practice (3d ed. 2007) § 38.40[2][a] & [f].)  While a jury trial is currently available as a matter of statute in a federal district court action for a tax refund (28 U.S.C. §§ 1346(a)(1) & 2402), there is no right to a jury trial in tax refund actions in the Court of Claims (*Malajalian v. United States* (1st Cir. 1974) 504 F.2d 842, 844, fn. 1), or in tax contests in district court, even when the taxpayer is required to deposit the contested amount with the Internal Revenue Service (*Thomas v. U. S.* (E.D.Mo. 1988) 695 F.Supp. 1021, 1022-1023).

The Tenth Circuit's view that the Seventh Amendment applies in tax refund cases must be deemed overly broad; it arose in an unusual case where the federal government brought a nonstatutory action against a state to recover a tax payment that had been passed along by a federal contractor.  (*New Mexico*, *supra*, 642 F.2d at pp. 398-399.)

7

*supra*, 35 U.S. 137, 159.)  However, the claim permitted in *Elliott* "had, as a strictly common law action, a short and unhappy life."  (Plumb, *supra*, 60 Harv. L.Rev. at p. 688.)  Collectors asserted the right to withhold disputed payments, which "led to great abuses, and to much loss to the public."  (*Cary v. Curtis* (1845) 44 U.S. 236, 243.)  Three years after the *Elliott* decision, Congress enacted legislation requiring customs duties paid under protest to be transferred to the treasury, and authorizing the Secretary of the Treasury to make refunds.  (Act of Mar. 3, 1839, § 2, 5 Stat. 339, 348); see Plumb, *supra*, 60 Harv. L.Rev. at p. 689.)  The Supreme Court decided that this statutory remedy had replaced the common law right of action against collectors, and also that the new administrative remedy was not subject to judicial review.  (*Cary v. Curtis*, *supra*, 44 U.S. at pp. 243-244.)

Congress again responded with legislation, explaining that the 1839 statute had not been intended to impair the right of action against a collector of customs, including the right to a trial by jury.  (Act of Feb. 26, 1845, 5 Stat. 727.)  No similar legislation covered internal revenue collectors, who were also required to turn tax payments over to the treasury regardless of protest by the taxpayer.  In 1866, however, the Supreme Court held that a right of action against internal revenue collectors had been recognized by implication in a number of statutes. (*City of Philadelphia v. The Collector* (1866) 72 U.S. 720, 731-732; see Plumb, *supra*, 60 Harv. L.Rev. at p. 689.)  "The action against the collector, therefore, was no longer a common law but a new statutory action, subject to such restrictions as Congress might provide."  (Plumb, at pp. 690-691.)

Accordingly, in 1927 the *Wickwire* court had ample support for its conclusion that "[i]t is within the undoubted power  of Congress to provide any reasonable system for the collection of taxes and the recovery of them when illegal, without a jury trial."  (*Wickwire*, *supra*, 275 U.S. at pp. 105-106, citing

8

*Murray's Lessee v. Hoboken Land and Improvement Co.* (1856) 59 U.S. 272, 283-284 [while customs collectors and the government "are exempt from suit, for anything done by the former in obedience to legal process, still, congress may provide by law, that both, or either, shall, in a particular class of cases, and under such restrictions as they may think proper to impose, come into a court of law or equity and abide by its determination"]; *Nichols v. United States* (1869) 74 U.S. 122, 127 [allowing actions for refunds of customs duties "was an act of beneficence on the part of the government . . . so it could have made [the Secretary of the Treasury] the final arbiter in all disputes concerning the same"]; and *Cheatham v. United States* (1876) 92 U.S. 85, 89 [in tax refund actions "the government has the right to prescribe the conditions on which it will subject itself to the judgment of the courts"].)

This court has also taken the view that a statutory action against the state for a tax refund is a departure from the common law right of action against tax collectors, and a remedy subject to restriction by the Legislature. The first California statute authorizing refund actions was enacted in 1893. Former Political Code section 3819 required a written protest, and provided that "when so paid under protest, the payment shall in no case be regarded as a voluntary payment, and [the taxpayer] may at any time within six months after such payment bring an action against the county, in the Superior Court, to recover back the tax . . . ." (Stats. 1893, ch. 20, § 1, p. 32.)[7] The reason for the Legislature's

---

[7]     The statute required the state to indemnify counties for refunds of taxes that had been paid into the state treasury. (Former Political Code § 3819, Stats. 1893, ch. 20, § 1, p. 32.) In the same year, the Legislature enacted the first statute allowing suits against the state, which was limited to contract and negligence claims. (Stats. 1893, ch. 45, p. 57.) Tax refund actions against the state were not

(*footnote continued on next page*)

9

specification that a payment under protest would not be regarded as voluntary was that California courts followed a stringent common law rule forbidding actions for tax refunds unless the payment was compelled. This rule, which has no counterpart in the refund statutes, is the primary reason why California courts have not regarded statutory refund actions as extensions of the common law.

The relationship between the common law rule and the statutory right to seek a refund was examined in *Southern Service Co., Ltd. v. Los Angeles* (1940) 15 Cal.2d 1 (*Southern Service*). There, a county sought dismissal of a refund action that was pending on appeal. The county relied on a newly enacted statute that barred statutory refund claims under certain circumstances and specified: " 'For the purposes of this section, the mere payment of a tax under protest shall not be deemed to constitute . . . an involuntary payment.' " (*Id*. at p. 6.) The *Southern Service* court observed that the effect of the statute "was to cut off the remedy to the plaintiff and to terminate the action herein unless the plaintiff had a vested property interest in or a contractual right to recover the claimed excessive portion of the taxes so paid." (*Id*. at p. 7.)

The court continued: "It is the settled law of this state that illegal taxes *voluntarily* paid may not be recovered by the taxpayer in the absence of a statute permitting a refund thereof; and in the absence of such statute only illegal taxes paid under duress, coercion or compulsion are considered to have been

_____

(*footnote continued from previous page*)

authorized until a later date. (See Stats. 1929, ch. 13, § 30, p. 31.) For our purposes of comparing the nature of the common law and statutory actions for tax refunds, the distinction between actions against counties and those against the state is inconsequential.

*involuntarily* paid and therefore recoverable. (*Brumagim v. Tillinghast* [(1861)] 18 Cal. 265, 269, 271; *Grimes v. County of Merced* [(1928)] 96 Cal.App. 76, 81-83; *Maxwell v. San Luis Obispo County* [(1886)] 71 Cal. 466.[8] See, also, *Brandt v. Riley* [(1934)] 139 Cal.App. 250, and cases hereinafter cited.)" (*Southern Service*, *supra*, 15 Cal.2d at p. 7, italics added.)

"The plaintiff concedes that the common law as to what constitutes an involuntary payment is the rule for the guidance of this court in determining whether the payment of the tax herein was voluntary or involuntary. The presence or absence of a written protest does not appear to be the distinguishing feature. That is, if the taxes were paid involuntarily, namely, 'by means which amount to duress or coercion, they may be reclaimed . . . without proof that they were paid under protest.' (*Brandt v. Riley*, *supra*, [139 Cal.App.] at page 253 . . . .) On the other hand it has also been held that the filing of a protest with a payment of illegal taxes otherwise voluntarily made does not deprive the payment of its voluntary character. (*Brumagim v. Tillinghast*, *supra*, [18 Cal.] at page 275;

---

**8**     It is not clear why the county, as opposed to the tax collector, was named as defendant in the *Maxwell* case, which predated the statutes permitting direct refund actions against counties. In another early case against a county, relief was sought under former Political Code section 3804, which provided that county boards of supervisors "may" refund taxes that were erroneously assessed. (*Younger v. Board of Supervisors* (1885) 68 Cal. 241, 242-243.) The court held that the board's denial of the plaintiff's claim was not subject to judicial review. (*Id*. at p. 243.) Beginning in 1893, however, the statutory term "may" was construed to mean "must," allowing taxpayers to pursue a judicial remedy. (*Hayes v. County of Los Angeles* (1893) 99 Cal. 74, 78-80; *Stewart Etc. Co. v. County of Alameda* (1904) 142 Cal. 660, 661-664.) The courts distinguished this statutory avenue of relief from the common law right of action for a tax refund, with its bar against recovery of "voluntary" payments. (*Stewart*, at pp. 662-663; see *Southern Service*, *supra*, 15 Cal.2d at pp. 9-10.)

11

*Bucknall v. Story* [(1873)] 46 Cal. 589; *Bank of Woodland v. Webber* ([1877)] 52 Cal. 73; *Merrill v. Austin* [(1879)] 53 Cal. 379; *Dear v. Varnum* [(1889)] 80 Cal. 86, 89; *Justice v. Robinson* [(1904)] 142 Cal. 199; *Warren v. City and County of San Francisco* [(1907)] 150 Cal. 167; see, also, *Meek v. McClure* [(1875)] 49 Cal. 623.)" (*Southern Service*, *supra*, 15 Cal.2d at pp. 7-8.)

The court reviewed a number of cases demonstrating that California common law precluded refunds of tax payments unless they were made under compulsion, strictly defined in *Brumagim v. Tillinghast* as "some actual or threatened exercise of power possessed, or supposed to be possessed, by the party exacting or receiving the payment over the person or property of the party making the payment, from which the latter has no other means of immediate relief than by advancing the money." (*Brumagim v. Tillinghast*, *supra*, 18 Cal. at p. 272; see *Southern Service*, *supra*, 15 Cal.2d at pp. 8-10.) It then emphasized that the statutes permitting refund actions were a sharp break from the common law rule: "The case of *Hellman v. City of Los Angeles* [(1905)] 147 Cal. 653, recognized that the foregoing was the general common-law rule which, however, has been abrogated by the adoption of sections 3804 and 3819 of the Political Code so as to permit recovery although the payments were voluntary in all those cases coming within the provisions of the code sections. Section 3819 of the Political Code, allowing an action to recover a refund of certain taxes paid under protest, was involved in the *Hellman* case. In that case the court stated that the statute in derogation of the common-law rule was 'befitting to this more enlightened age.' " (*Southern Service*, *supra*, 15 Cal.2d at p. 10, quoting *Hellman v. City of Los Angeles*, *supra*, 147 Cal. at p. 655.)

12

The *Southern Service* court concluded: "The foregoing discussion and review leads to the conclusion that the plaintiff possessed no right or remedy pursuant to section 3804 of the Political Code which existed apart from the statute itself and which the legislature could not cut off by repeal. The general relationship of sovereign and taxpayer is not founded on nor does it create any contractual rights. (*Perry v. Washburn* [(1862)] 20 Cal. 318, 350; *Spurrier v. Neumiller* [(1918)] 37 Cal.App. 683.) A right to a credit or refund of taxes is purely statutory. (*Spurrier v. Neumiller*, *supra*; *Bell v. County of Los Angeles* [(1928)] 90 Cal.App. 602, citing *Brooks v. County of Tulare* [(1897)] 117 Cal. 465.)" (*Southern Service*, *supra*, 15 Cal.2d at p. 11.)[9]

The discussion in *Southern Service* undermines the Court of Appeal's conclusion that a statutory refund action occupies the "same class" as the common law right of action against a tax collector. (*People v. One 1941 Chevrolet Coupe*, *supra*, 37 Cal.2d at p. 300.) Under our modern refund statutes, whether a tax payment was voluntary or involuntary is irrelevant. A taxpayer may seek a refund even without protesting the payment. This is a far cry from the common law right of action reviewed in *Southern Service*, which extended only to payments extracted under compulsion.[10] The Court of Appeal reasoned that Gonzales's

---

[9] The court noted, however, that the Legislature's repeal did not affect "the common-law right to a refund of taxes involuntarily paid." (*Southern Service*, *supra*, 15 Cal.2d at p. 12.)

[10] Of course, in a sense all tax payments are "compelled" by law. But the bar for demonstrating compulsion as an element of the common law refund action was extraordinarily high. Even a threat by the collector to sell the taxpayer's property was insufficient, if the conveyance would not result in a cloud on the title. "The payment of a tax to prevent a threatened sale of real estate is not compulsory, unless the conveyance by the officer will have the effect to deprive the owner of

(*footnote continued on next page*)

13

notice to the state that he intended to seek a refund would have made his payment of additional taxes under the amnesty program "involuntary" for purposes of the common law. This view is inconsistent with California law.[11] It is also beside the point, because an involuntary payment is not required under the refund statutes authorizing Gonzales's claim. The absence of this element clearly distinguishes the statutory proceeding from the common law action. Indeed, even the early tax refund statutes, which required a payment under protest, were such a significant relaxation of the earlier rule that they were deemed an abrogation of the common law, not a continuation of it. (*Southern Service*, *supra*, 15 Cal.2d at p. 10; *Hellman v. City of Los Angeles*, *supra*, 147 Cal. at p. 655.)

Statutory tax refund actions have been compared for some purposes to the common law writ of assumpsit, which was rooted in contract or quasi-contract. (*Northrop Aircraft v. Cal. Emp. etc. Com.*, *supra*, 32 Cal.2d at pp. 879-880 [noting that refund action is akin to assumpsit but declining to apply common law remedial principles]; *Jogani v. Superior Court*, *supra*, 165 Cal.App.4th at pp. 905-907 [discussing contractual character of assumpsit]; see also *City of Philadelphia*

---

(*footnote continued from previous page*)

some defense to the tax, or throw upon him the burden of showing its illegality. If the officer's want of authority will appear upon the face of the deed, or if the illegality of the proceedings will necessarily appear in any attempt by the purchaser to disturb the owner in the possession of the land, a payment to prevent such sale is not made under duress." (*Phelan v. San Francisco* (1898) 120 Cal. 1, 5, discussing the common law liability of tax collectors.)

[11] *Southern Service* makes it clear that a protest "does not deprive the payment of its voluntary character." (*Southern Service*, *supra*, 15 Cal.2d at p. 8.) A more lenient rule appears in federal cases, where a payment under protest was considered involuntary. (*City of Philadelphia v. The Collector*, *supra*, 72 U.S. 720, 731-732; *Elliott v. Swartwout*, *supra*, 35 U.S. at p. 153.)

*v. The Collector*, *supra*, 72 U.S. 720, 731 [appropriate remedy to recover taxes erroneously or illegally assessed is "an action of assumpsit for money had and received"].)  The *Southern Service* court, however, held that the statutory cause of action for a tax refund is a purely legislative creation, with no foundation in contract.  (*Southern Service*, *supra*, 15 Cal.2d at p. 11.)  This settled proposition supports the conclusion that the statutory right of action occupies a different class from the common law form of action in which a jury trial was available.  (See *People v. Union Oil Co.* (1957) 48 Cal.2d 476, 481; *Kuykendall v. State Bd. of Equalization* (1994) 22 Cal.App.4th 1194, 1214, fn. 27.)

We long ago recognized the distinct character of tax proceedings in the context of tax collection:  "The state through its legislature can avail itself of the judicial power as the means by which it will collect the tax, and in such proceedings it may prescribe such procedure as may best avail for that purpose, irrespective of the mode of procedure provided for the determination of controversies between individuals . . . .  Although the tax is an obligation from the citizen to the state, it is not of the same character of obligation as exists between citizens, and for the purposes of its collection the state is not limited to the same mode or to the same procedure which it prescribes for individuals in the collection of obligations between themselves."  (*People v. Central Pacific R. R. Co.* (1895) 105 Cal. 576, 589; accord, *Sonleitner v. Superior Court*, *supra*, 158 Cal.App.2d at pp. 261-262; see also *Hagar v. Board of Supervisors of Yolo County* (1874) 47 Cal. 222, 234 ["the right of trial by jury, has no application to proceedings for the collection of taxes"].)

The same general principles apply to the tax refund statutes.  The statutory cause of action is fundamentally different in character from the old private right of action against tax collectors.  This is not an instance where the Legislature

authorized " 'the type of action which was cognizable in a common-law court . . . at the time of the adoption of the Constitution of California.' " (*People v. One 1941 Chevrolet Coupe*, *supra*, 37 Cal.2d at p. 300.)  Although " '[t]he constitutional right of trial by jury is not to be narrowly construed' " (*ibid.*), the distinctions between the common law and statutory rights of action for a tax refund are broad.[12]  Moreover, California's Constitution took effect at a time when the federal right to seek a tax refund had evolved into a statutory one, subject to congressional restriction in its particulars, including the right to a jury trial.  We conclude that article I, section 16 of the California Constitution does not require a jury trial in a statutory action for a state income tax refund.

---

[12]  The Court of Appeal relied on a concurring opinion in *Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 411, for the proposition that in cases of doubt, a litigant's right to trial by jury must be preserved.  We have followed this approach in cases, like *Blanton*, that involve waiver of the right to a jury trial. (See *Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944, 956.)  However, when the issue is whether the right to a jury exists at all in a particular kind of action, we are guided by a different body of case law, mindful that the right is not to be narrowly construed.

16

DISPOSITION

We reverse the Court of Appeal's judgment.

**CORRIGAN, J.**

**WE CONCUR:**

 **CANTIL-SAKAUYE, C. J.**
 **KENNARD, J.**
 **BAXTER, J.**
 **WERDEGAR, J.**
 **CHIN, J.**
 **YEGAN, J.***

---

* Associate Justice, Court of Appeal, Second Appellate District, Division Six, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Franchise Tax Board v. Superior Court

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 177 Cal.App.4th 36
**Rehearing Granted**

_____

**Opinion No.** S176943
**Date Filed:** June 6, 2011

_____

**Court:** Superior
**County:** San Francisco
**Judge:** John Kennedy Stewart

_____

**Counsel:**

Edmund G. Brown, Jr., and Kamala G. Harris, Attorneys General, David S. Chaney, Chief Assistant Attorney General, Gordon Burns, Deputy State Solicitor General, Paul D. Gifford, Assistant Attorney General, William L. Carter and Jeffrey A. Rich, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Martin A. Schainbaum and Bryant W. H. Smith for Real Party in Interest and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Jeffrey A. Rich
Deputy Attorney General
1300 I Street, Suite 1300
Sacramento, CA  94244-2550
(916) 324-5154

Martin A. Schainbaum
351 California Street, Suite 800
San Francisco, CA  94104-2406
(415) 777-1040