Filed 5/7/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COUNTY OF LOS ANGELES, <br><br> Defendant and Respondent. | B225245 <br><br> (Los Angeles County Super. Ct. No. BC389742) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard E. Rico, Judge. Reversed and remanded with directions.

Moore & Associates, Kevin J. Moore for Plaintiff and Appellant.

Pillsbury Winthrop Shaw Pittman, Craig A. Becker, for Amicus Curiae California Public Employees' Retirement System in support of Plaintiff and Appellant.

Randy Ferris, Chief Counsel, Robert W. Lambert, Assistant Chief Counsel, Kiren Kaur Chohan and Crystal Ying Yu, Tax Counsel, for Amicus Curiae California State Board of Equalization in support of Plaintiff and Appellant.

Andrea Sheridan Ordin and John F. Krattli, County Counsel, Albert Ramseyer, Principal Deputy County Counsel, for Defendant and Respondent.

Plaintiff and appellant California State Teachers' Retirement System (STRS), a public entity, appeals a judgment following a grant of summary judgment in favor of defendant and respondent County of Los Angeles (the County) on a complaint for refund of property taxes.

STRS is authorized to invest in real estate. Because STRS is a unit of state government, property it owns is exempt from property taxation. (Cal. Const., art. XIII, § 3(a). However, the private lessees of real property owned by STRS are subject to property tax based on the lessees' possessory interest. The essential issue raised on appeal is the constitutionality of Government Code section 7510, subdivision (b)(1), insofar as it prescribes the method for determining the assessed value of a private lessee's leasehold interest in real property owned by a state public retirement system, when the lessee has leased only a portion of the property.[1]

---

[1]  Government Code section 7510 states in pertinent part at subdivision (b)(1): "(b)(1) Whenever a state public retirement system, which has invested assets in real property and improvements thereon for business or residential purposes for the production of income, leases the property, *the lease shall provide*, pursuant to Section 107.6 of the Revenue and Taxation Code, *that the lessee's possessory interest may be subject to property taxation and that the party in whom the possessory interest is vested may be subject to the payment of property taxes levied on that interest.* The lease shall also provide that the full cash value, as defined in Sections 110 and 110.1 of the Revenue and Taxation Code, of the possessory interest upon which property taxes will be based shall equal the greater of (A) the full cash value of the possessory interest, or (B), *if the lessee has leased less than all of the property, the lessee's allocable share of the full cash value of the property that would have been enrolled if the property had been subject to property tax upon acquisition by the state public retirement system.* The full cash value as provided for pursuant to either (A) or (B) of the preceding sentence shall reflect the anticipated term of possession if, on the lien date described in Section 2192 of the Revenue and Taxation Code, that term is expected to terminate prior to the end of the next succeeding fiscal year. *The lessee's allocable share shall, subject to the preceding sentence, be the lessee's leasable square feet divided by the total leasable square feet of the property.*" (Italics added.)

All further statutory references are to the Government Code, unless otherwise specified.

2

Section 7510, subdivision (b)(1) provides where, as here, a lessee has leased less than all of the property, the lessee's tax is based on "*the lessee's allocable share of the full cash value of the property* that would have been enrolled if the property had been subject to property tax upon acquisition by the state public retirement system," with the lessee's allocable share based on the lessee's percentage of the total leasable square feet of the property. (*Ibid.*, italics added.) In other words, under the statute the lessee's tax is based on the full cash value of the property, even though the lessee holds only a possessory interest in the property.

We conclude there are two constitutional defects in the statute's valuation methodology. Section 7510, subdivision (b)(1), is facially unconstitutional insofar as it bases a lessee's assessment on the lessee's allocable share of the full cash value of the property, based on the lessee's percentage of the total leasable square feet of the property. Under the statute, the exempt remainder or reversionary interest, belonging to the public retirement system owner, is included in the assessment of the lessee's possessory interest. Consequently, the statute violates the prohibition against assessing property taxes on publicly owned real property (Cal. Const., art. XIII, §3(a)), as well as the prohibition on assessing property in excess of its fair market value. (Cal. Const., art. XIII, § 1.)

Therefore, the judgment will be reversed and the matter remanded for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The subject property and the assessment.*

In 1984, STRS, a public retirement system, purchased the subject real property, an office building at 924 Westwood Boulevard in Los Angeles (hereafter, the building) for $28.5 million. The building has approximately 143,377 in net rentable square feet. STRS owns the building in fee simple.

Because STRS is a public entity, its interest in the building is exempt from property taxation. (Cal. Const., art. XIII, § 3(a).) However, a private lessee of publicly owned property is subject to property taxation on its "possessory interest" in the property.

3

(§ 7510, subd. (b)(1).) Therefore, STRS's lessees in the building were subject to property tax.

In January 1998, Dong Eil Kim and Chang Nim Kim, doing business as Mail Boxes, Etc. (collectively, Kim) entered into a five-year lease with STRS for a retail space consisting of 1,280 square feet on the ground floor of the building. In a 2003 amendment to the lease, the parties extended the lease for an additional five years, to terminate February 4, 2008.

The original lease required Kim to pay, "[i]n addition to Base Rent, . . . Tenant's Proportionate Share of Operating Costs for each calendar year to compensate for changes in Landlord's Operating Costs." The original lease obligated Kim to pay all property taxes imposed in connection with the leasehold.

A 2003 amendment to Kim's lease provided: "5. Tenant shall continue to be responsible for its NNN charges under the lease, except that the real estate tax component shall be billed directly to Tenant, rather than as a percentage of total taxes paid for the building."[2]

For the tax year July 1, 2006 through June 30, 2007, the County assessed the value of Kim's leasehold interest at $418,618. Based on the assessed value, the County levied a property tax against Kim in the amount of $4,983.34. STRS paid the County the amount of the tax owed by Kim.

2. *Application for a reduced assessment and refund.*

STRS and Kim then filed an application with the County's Assessment Appeals Board (Board) to reduce the assessed value of Kim's leasehold interest and for a refund. The application identified STRS as an "*affected party*" in the matter, and indicated the application was being presented as a "*test case*" to determine the appropriate valuation methodology for the various buildings STRS owns in Los Angeles County.

---

[2] An NNN, or triple net lease, is one that passes on to the tenant all the maintenance and operating costs incurred for the leased property. (*Sierra View Local Health Care Dist. v. Sierra View Medical Plaza Associates* (2005) 126 Cal.App.4th 478, 485, fn. 4.)

4

The application by STRS and Kim challenged the constitutionality of section 7510, and further argued that even assuming the statute were constitutional, its provisions had been misinterpreted and misapplied by the Assessor.

The Board denied the application. With respect to the constitutionality of the pertinent statute, the Board ruled that, as a quasi-judicial body, it lacked jurisdiction to declare the statute unconstitutional. The Board further found the Assessor did not misinterpret or misapply the provisions of section 7510, subdivision (b).

3. *Trial court proceedings*.

a. *Pleadings*.

On April 25, 2008, STRS and Kim (collectively, plaintiffs) filed a verified complaint for refund of property taxes. They alleged in pertinent part: "The valuation methodology that the County Assessor used in making this assessment was unsound and did not properly apply the governing provisions of the California Constitution, statutes, administrative regulations and assessment procedures in evaluating [Kim's] possessory interest under the Lease ('the Possessory Interest'). Among other things . . . , 'assessing property tax on the full fee interest in the property rather than just the leasehold interest in the property' results in a differential taxation of real property that violates Article XXX, Section I of the California Constitution because the value taxed is greater than the fair market value of the lessee's possessory interest alone."

The complaint sought a judicial determination that: (1) section 7510 is void and unenforceable in that it violates the provisions of articles XIII and XIIIA of the California Constitution; (2) the method of valuation used by the County Assessor and by the Board was unsound and resulted in an improper and arbitrary value for Kim's possessory interest in the premises; and (3) the common areas of the building do not constitute possessory interests subject to taxation because the common areas do not satisfy the requirements of possession, independence and exclusivity under the applicable law. Plaintiffs requested a refund of taxes paid and that the matter be remanded to the Board so that the County may value the possessory interest in a manner consistent with the trial court's determination.

5

*b. Summary judgment papers; undisputed facts.*

The County and STRS presented the case to the trial court by way of cross-motions for summary judgment. Kim was not a participant in the summary judgment proceedings. The papers reflect the pertinent facts are largely undisputed, to wit:

The County determined the base year value of the building based upon STRS's fee simple interest in the entire property. The base year was 1985 and the base year value was STRS's purchase price of $28.5 million. The County trended the base year value forward a maximum of two percent per year from 1985 to 2006, pursuant to Proposition 13 (Cal. Const., art. XIIIa, § 2(b)), and the cumulative upward adjustment from 1985 to 2006 was 48.642 percent. Thus, for the relevant tax year commencing July 1, 2006, the County assessed the value of the building at $42,362,834. Of that sum, the County allocated $29,744,119 to the office space and the remaining $12,618,715 to the retail space in the building. The County established Kim's percentage of the total retail rentable square footage by taking Kim's square footage and dividing it by the total retail rentable square footage. The County determined Kim's premises represented 3.317437 percent of the total retail rentable square footage. Applying that percentage to the $12,618,715 value of the retail space in the building, the County assessed the value of Kim's leasehold interest at $418,618. Based on the assessed value, the County levied property tax against Kim in the amount of $4,983.34.

In its moving papers, the County asserted section 7510 is lawful and valid.

STRS, in turn, argued the valuation methodology prescribed by section 7510, subdivision (b)(1), violates the California Constitution because: (1) it does not value taxable possessory interests in accordance with their fair market value; (2) it taxes property exempt from taxation; (3) its classification of taxpayers violates equal protection; and (4) its valuation methodology is not uniform in its application to all similarly situated taxpayers. STRS further contended the County violated the California Constitution in its application of section 7510, subdivision (b)(1) to Kim.

6

c. *Trial court's ruling*.

On January 14, 2010, the motions for summary judgment came on for hearing and were taken under submission. Thereafter, the trial court granted the County's motion for summary judgment and took STRS's motion off calendar as moot. The trial court ruled on the undisputed "facts and given the relevant case law, the statute on its face and the valuation methodology as applied here has not been shown to be unconstitutional, violative of equal protection or arbitrary."

4. *Appellate proceedings*.

On June 21, 2010, STRS filed a timely notice of appeal from the judgment.

It appeared to this court the appeal by STRS presented a case of first impression in California, involving the assessment of a taxable possessory interest, a leasehold, in tax exempt property owned by a public retirement system. Due to the dearth of case authority and the statewide importance of the issue, this court sent a letter to counsel requesting supplemental briefing and inviting interested parties to participate as amicus curiae.

Our letter identified "two basic questions before this court: (1) Does [STRS], which is exempt from property taxation and which paid the property tax assessed to its lessee, have standing to challenge the lessee's tax assessment? and (2), if this court can reach the merits of the controversy, does . . . section 7510, subdivision (b)(1) fail to tax a lessee's taxable possessory interest in accordance with the possessory interest's fair market value so as to render the statute's valuation methodology unconstitutional?"

The California Public Employees' Retirement System (CalPERS) and the California State Board of Equalization (BOE) subsequently filed amicus briefs in support of STRS.[3]

---

[3]  The BOE has special expertise in this area (*EHP Glendale, LLC v. County of Los Angeles* (2011) 193 Cal.App.4th 262, 274) and therefore its interpretation of the meaning and legal effect of section 7510 "is entitled to consideration and respect by the courts." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7 (*Yamaha*).) Pursuant to Government Code section 15606, subdivisions (c) and (e), it is the role of the

7

## CONTENTIONS

STRS contends section 7510, subdivision (b)(1), violates the California Constitution because: (1) it does not value taxable possessory interests in accordance with their fair market value; (2) it taxes property exempt from taxation; (3) its classification of taxpayers violates equal protection; (4) its valuation methodology is not uniform in its application to all similarly situated taxpayers. STRS further contends the County violated the California Constitution in its application of section 75101, subdivision (b)(1) to Kim.[4]

## DISCUSSION

1. *STRS, although its property is exempt from real property taxation, has standing to challenge the methodology used by the County to levy tax against STRS's lessee because STRS actually paid the tax.*

Although Kim was a party below, Kim is not a party to this appeal. STRS is the sole appellant. The County contends STRS lacks standing to prosecute this appeal because STRS acted as a volunteer in paying the disputed tax that was levied on an unsecured basis against Kim. We reject the County's contention and conclude STRS has standing to prosecute this matter.[5]

The statutory scheme clearly contemplates that one person may pay property taxes on the property of another. Revenue and Taxation Code section 2910.7 states: "Any person who receives a tax bill respecting property which has been assessed to *another and who has power, pursuant to written or oral authorization, to pay the taxes on behalf*

---

BOE to "[p]rescribe rules and regulations to govern . . . assessors when assessing" and to "[p]repare and issue instructions to assessors designed to promote uniformity throughout the state and its local taxing jurisdictions in the assessment of property for the purposes of taxation . . . ." (*Hahn v. State Bd. of Equalization* (1999) 73 Cal.App.4th 985, 990-991, fn. 4.)

[4] In addition, STRS argues the trial court erred in granting the County's motion for summary judgment because there is no evidence to support the factual allegations made in the County's motion, and the County failed to make a prima facie case that it properly assessed Kim's leasehold interest.

[5] Amicus BOE agrees STRS has standing to maintain this action.

*of another* shall after the taxes have been paid in full and within 30 days of the receipt of the written request of the assessee, either deposit the original or a copy of the bill in the United States mail in an envelope addressed to the last known address of the assessee . . . or deliver it otherwise to the assessee within said 30 days."  (Italics added.)

Further, Revenue and Taxation Code section 5140, pertaining to property taxation, specifies the persons authorized to bring a refund action.  It states:  "*The person who paid the tax,* his or her guardian or conservator, the executor of his or her will, or the administrator of his or her estate may bring an action only in the superior court . . . against a county or a city to recover a tax which the board of supervisors of the county or the city council of the city has refused to refund on a claim filed pursuant to Article 1 (commencing with Section 5096) of this chapter.  *No other person may bring such an action*; but if another should do so, judgment shall not be rendered for the plaintiff."  (Italics added.)

The " 'limitation contained in section 5140 simply means that *only a person who has actually paid the tax* may bring an action as opposed to the situation where someone else pays the property taxes of an owner of property.' [Citation.] [¶]  [S]ection 5140 does not affect the determination of what property is taxable and what property is exempt. It merely defines the procedure for refunding taxes improperly collected. The procedure provides for refund to the person who, or entity which, paid the tax if the property was exempt.  This orderly approach prevents double refund of the taxes to the party who paid the tax and the party who owns the tax-exempt property . . . [¶]  . . . [S]ection 5140 is a mechanism for enforcing constitutional and statutory rights.  Failure to follow the correct procedural rules can result in forfeiture of the power to enforce the constitutional right." (*Mayhew Tech Center, Phase II v. County of Sacramento* (1992) 4 Cal.App.4th 497, 510, italics added [state, as lessee, lacked standing to seek refund of taxes which it did not pay].)

The reason for Revenue and Taxation Code section 5140's "restrictive standing requirement is evident. This limitation frees the taxing authority from the burden, often far greater than in the instant case, of untangling a web of agreements and/or accounts in order to ascertain who is the proper recipient of any refund due. This determination is, of course, critical to avoiding a double payment." (*IBM Personal Pension Plan v. City and County of San Francisco* (2005) 131 Cal.App.4th 1291, 1305 [pension plan lacked standing to sue for refund of property taxes and penalties paid by trustee of the plan on its behalf].)

Because STRS, not Kim, paid the tax, it is STRS and only STRS which has standing to prosecute the refund action and standing to maintain this appeal. (Rev. & Tax. Code, § 5140.)

The County's characterization of STRS as a "volunteer" does not defeat STRS's standing. "Under our modern refund statutes, whether a tax payment was voluntary or involuntary is irrelevant. A taxpayer may seek a refund even without protesting the payment. This is a far cry from the common law right of action . . . , which extended only to payments extracted under compulsion." (*Franchise Tax Bd. v. Superior Court* (2011) 51 Cal.4th 1006, 1017 [held, taxpayer has no right to jury trial in action for refund of state income taxes].)

Therefore, the County's assertion that STRS acted as a volunteer in paying Kim's property tax does not meet the issue. The inquiry, for purposes of determining standing to bring a refund action, is who paid the property tax (Rev. & Tax. Code, § 5140), not the person's motivation for paying the tax. Because STRS paid the tax, it has standing to litigate this matter.

We now turn to the merits of the appeal.

2. *Standard of review; the extent of judicial deference to administrative agency interpretation.*

We independently determine the proper interpretation of section 7510. "As the matter is a question of law, we are not bound by evidence on the question presented below or by the lower court's interpretation." (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562.)

As for the degree of deference to be accorded to the interpretation of amicus BOE, the Supreme Court addressed the issue of judicial deference to administrative agency statutory interpretation in *Yamaha, supra,* 19 Cal.4th 1. While "agency interpretation of the meaning and legal effect of a statute is entitled to consideration and respect by the courts" (*id*. at p. 7), "agency interpretations are not binding or necessarily even authoritative" (*id*. at p. 8). "Courts must, in short, independently judge the text of [a] statute . . . ." (*Id*. at p. 7.) *Yamaha* determined the weight accorded to an agency's interpretation is "fundamentally situational" (*id*. at p. 12, italics omitted) and "turns on a legally informed, commonsense assessment of [its] contextual merit" (*id*. at p. 14). *Yamaha* set down a basic framework of factors as guidance and concluded that the degree of deference accorded should be dependent in large part upon whether the agency has a " 'comparative interpretative advantage over the courts' " and on whether it has probably arrived at the correct interpretation. (*Id*. at p. 12.) Further, a court is less inclined to defer to an agency's interpretation of a statute than to its interpretation of a self-promulgated regulation. (*Ibid*.)

3. *General principles re taxation of possessory interests.*

In order to provide a framework for analyzing section 7510, we begin with a brief overview of fundamental principles pertaining to the creation and taxation of possessory interests in real property.

It is hornbook law that a "lessee has a present possessory interest in the premises, [while] the lessor has a future reversionary interest and retains fee title. [Citations.]" (*Avalon Pacific-Santa Ana, L.P. v. HD Supply Repair & Remodel, LLC* (2011) 192 Cal.App.4th 1183, 1190.) In other words, "when a possessory interest is created, the

11

bundle of rights that constitute the fee simple interest is divided into a possessory interest (or interests) and a nonpossessory interest (or interests). . . . [I]n the creation of a lease, the fee simple interest is divided into the leasehold interest (i.e., the possessory interest) and the leased fee interest (i.e., the nonpossessory interest)." (Assessors' Handbook Section 510, Assessment of Taxable Possessory Interests, published by BOE in December 2002, p. 17 (hereafter, Handbook) (available at www.boe.ca.gov/proptaxes/pdf/ah510.pdf).) A "possessory interest consists of a right to the possession of real property for a period less than perpetuity by one party, the holder of the possessory interest, while another party, the fee simple owner, retains the right to regain possession of the real property at a future date." (*Id*., at p. 1.)

The term "possessory interests" is defined by statute as "[p]ossession of, claim to, or right to the possession of land or improvements that is independent, durable, and exclusive of rights held by others in the property, except when coupled with ownership of the land or improvements in the same person." (Rev. & Tax. Code, § 107, subd. (a); see also 18 Cal. Code Regs., § 20(a) [defining possessory interests in real property].)

Although publicly owned real property is exempt from taxation (Cal. Const., art. XIII, § 3), possessory interests in such land or improvements " 'are taxable under section 107 of the Revenue and Taxation Code and in pursuance of the constitutional mandate that "all property . . . shall be taxed." (Const., art. XIII, § 1.)' [Citation.] Privately held possessory interests in property owned by the federal government, the state, and municipalities are subject to taxation. [Citation.] Because a large proportion of California land was (and is) in public ownership, taxation of possessory interests is an important source of local government revenue. [Citations.]" (*Connolly v. County of Orange* (1992) 1 Cal.4th 1105, 1118.)

With respect to the standard for taxing possessory interests, under section 1 of article XIII of the California Constitution (considered in conjunction with the provisions of article XIIIA (Proposition 13)), all property is taxed according to its "full value,"

12

meaning its fair market value, unless an alternative standard of value is constitutionally prescribed. (Handbook, *supra*, at p. 16.) [6]

The applicability of the market value standard to taxable possessory interests also was made clear by the California Supreme Court in *De Luz Homes v. County of San Diego* (1955) 45 Cal.2d 546 (*De Luz*). *"The standard of "full cash value" applies equally to a leasehold interest. Accordingly, the assessor must estimate the price a leasehold would bring on an open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other."* (*Id.* at p. 566, italics added.)

The statutory definition of fair market value for assessment purposes is found in Revenue and Taxation Code section 110. " '[F]air market value' means the amount of cash or its equivalent that property would bring if exposed for sale in the open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other, and both the buyer and the seller have knowledge of all of the uses and purposes to which the property is adapted and for which it is capable of being used, and of the enforceable restrictions upon those uses and purposes." (*Id.* at subd. (a).)

The BOE has promulgated a regulation, Property Tax Rule 21 (18 Cal. Code Regs., § 21), which addresses the valuation of taxable possessory interests. Rule 21 provides in relevant part that "the fair market value of a taxable possessory interest is the fair market value of the fee simple absolute interest reduced only by the value of the property rights, if any, granted by the public owner to other persons and by the value of

---

[6]     Article 13A, added by Proposition 13 (adopted June 6, 1978), imposed a one percent limitation, providing "The maximum amount of any ad valorem tax on real property shall not exceed One percent (1%) of the full cash value of such property. (Cal. Const., art. XIIIA, § 1(a).) Article XIIIA defines "full cash value" in two ways: "the county assessor's valuation of real property as shown on the 1975-76 tax bill under 'full cash value' or, thereafter, the appraised value of real property when purchased, newly constructed, or a change in ownership has occurred after the 1975 assessment." (Art. XIIIA, § 2, subd. (a).) The full cash value base thereafter may be adjusted to "reflect from year to year the inflationary rate not to exceed 2 percent for any given year . . . , or may be reduced to reflect . . . a decline in value." (Art. XIIIA, § 2, subd. (b).)

the property rights retained by the public owner (excluding the public owner's right to receive rent)." (18 Cal. Code Regs., § 21(b)(1).)

Perhaps "the cardinal feature of a taxable possessory interest is that it is an interest of finite duration. At some future date, the interest of the private possessor will terminate, and possession of the property will revert to the public owner." (Handbook, *supra,* at p. 21.) Therefore, "[w]hen valuing a taxable possessory interest, the appraiser must determine a term of possession for the interest. . . . The term of possession also affects the value of a taxable possessory interest. All else being equal, the longer the term of possession, the higher the value of the possessory interest." (*Ibid.*)

With this overview of the creation and valuation of private possessory interests in publicly owned property, we turn to section 7510, which is the focus of this controversy.

4. *History of section 7510.*

In 1982, the Legislature enacted Education Code former section 22313 to authorize STRS to invest a portion of its assets in real estate, so as to broaden STRS's investment opportunities on behalf of its members and retirees. (Assem. Bill No. 662 (1981-1982 Reg. Sess.) (AB 662); Stats. 1982, ch. 24, § 1.)

Property which is owned by STRS is exempt from real property taxation. (Cal. Const., art. XIII, § 3(a).) Therefore, at the same time that it expanded STRS's investment authority, the Legislature enacted section 7510 (Stats. 1982, ch. 24, § 2), to require STRS to reimburse local governments by way of an "in lieu" fee, so as to offset the local governments' loss of property tax revenues resulting from such investments. (State and Consumer Services Agency, Enrolled Bill Rep. on AB 662, Feb. 4, 1982.)

14

As enacted, section 7510 stated in pertinent part: "A public retirement system, which has invested assets in real property and improvements thereon for business or residential purposes for the production of income, shall pay annually to the city or county, in whose jurisdiction the real property is located and has been removed from the secured roll, *a fee for general governmental services equal to the difference between the amount that would have accrued as real property secured taxes and the amount of possessory interest unsecured taxes paid for that property*. The governing bodies of local entities may adopt ordinances and regulations authorizing retirement systems to invest assets in real property subject to the forgoing requirements." (Stats. 1982, ch. 24, § 2, italics added.)

In other words, although the lessees of real property owned by STRS or CalPERS paid property taxes based on the lessees' possessory interest, "the amount of the combined possessory interest in a parcel [was] less than the amount of the parcel's full fair market value. Therefore, the property tax collected from [CalPERS] and STRS lessees [was] less than what would be collected by the county if the parcel were privately owned. To make up for this loss in property tax revenues, [section 7510] allow[ed] local governments to charge [CalPERS] and STRS an 'in-lieu' fee to pay for the county's general services." (Governor's Office of Planning & Research, Enrolled Bill Rep. on Sen. Bill No. 1687 (SB 1687), Sept. 2, 1992.)

In 1991, the Attorney General opined section 7510's imposition of an "in lieu" fee for general government services upon CalPERS based on its ownership of real property was unconstitutional. (74 Ops.Cal.Atty.Gen. 6 (1991).) The opinion reasoned the " 'fee for general governmental purposes' imposed by section 7510 [was] not a 'fee' at all," but rather, "an 'ad valorem tax on real property' . . . , since it is exacted for the general expenses of local governments." (*Id*. at p. 3.)

The following year, mindful of the Attorney General's opinion, the Legislature amended section 7510 to abolish the "in-lieu fee and instead require that all leases include a provision which would directly pass the full property tax onto the lessee." (Governor's Office of Planning & Research, Enrolled Bill Rep. on SB 1687, Sept. 2,

15

1992, p. 1.) Thus, the Legislature decided to shift the entire property tax burden to the lessee, even though the lessee merely had held a possessory interest in the property.

As amended in 1992, section 7510 provided in relevant part at subdivision (b)(1): "Whenever a state public retirement system, which has invested assets in real property and improvements thereon for business or residential purposes for the production of income, leases the property, the lease shall provide, pursuant to Section 107.6 of the Revenue and Taxation Code, that the lessee's possessory interest may be subject to property taxation and that the party in whom the possessory interest is vested may be subject to the payment of property taxes levied on that interest.  The lease shall also provide that the full cash value, as defined in Sections 110 and 110.1 of the Revenue and Taxation Code, of the possessory interest upon which property taxes will be based *shall equal the greater of (A) the full cash value of the possessory interest, or (B), if the lessee has leased less than all of the property, the lessee's allocable share of the full cash value of the property that would have been enrolled if the property had been subject to property tax upon acquisition by the state public retirement system.*  The lessee's allocable share shall be the lessee's leasable square feet divided by the total leasable square feet of the property." (Stats. 1992, ch. 1158, § 1, p. 5409.)[7]

---

[7]     The two subsequent amendments to section 7510 are not in issue.  (See Historical & Statutory Notes, 32A Pt. 3 West's Ann. Gov. Code (2008 ed.) foll. § 7510, p. 470; Stats. 1993, ch. 1187, § 2 (SB 70); Stats. 1994, ch. 1281, § 1 (SB 1972).)  Because Kim was a lessee for the entire tax year ending June 30, 2007, we are not concerned with the portion of section 7510, subdivision (b)(1), which requires the valuation of a possessory interest to "reflect the anticipated term of possession if, on the lien date described in Section 2192 of the Revenue and Taxation Code [i.e., January 1 preceding the fiscal year for which the taxes are levied], that term is expected to terminate prior to the end of the next succeeding fiscal year."  We also are not concerned with section 7510, subdivision (a), which, by its terms, does "not apply to property owned by any state public retirement system."  (§ 7510, subd. (a)(3).)

Further, this is not a situation in which a single lessee occupies an entire property.  Our focus is squarely on section 7510, subdivision (b)(1), as it relates to lessees such as Kim, who leased only a portion of the subject property.  The pertinent provision is "the possessory interest upon which property taxes will be based shall equal the greater of

The constitutionality of the 1992 enactment was an issue from the inception. The legislative history of SB 1687 reveals that at the time the bill was under consideration, the BOE took the position that the 1992 amendment to section 7510 was unconstitutional. The BOE opined that "requiring the full value of the full fee interest to be assessed against a private lessee would amount to taxation of constitutionally exempt property. Accordingly, it appears that a constitutional amendment would be necessary to accomplish the purpose of this bill." (BOE, Legislative Bill Analysis of SB 1687, July 7, 1992.)[8]

Similarly, the Assembly Republican Caucus opined "this bill may be unconstitutional because it may tax leaseholders at a higher rate than the fair market value of a leasehold estate and it would require leaseholders to make payments based on the ownership interest in the property even though the lessee holds only a possessory interest." (Governor's Office of Planning & Research, Enrolled Bill Rep. on SB 1687, Sept. 2, 1992, p. 5.)

Notwithstanding these concerns, the Governor approved the bill and it took effect as an urgency measure on September 30, 1992.

In sum, the 1992 amendment to section 7510 was a departure from the standard of assessing possessory interests based on fair market value. Section 7510, subdivision (b)(1) created a special rule for investment property owned by a state public retirement system. Instead of taxing lessees of such property based on the fair market value of their possessory interests, the lessees were to be taxed based on their "allocable share of the full cash value of the property that would have been enrolled if the property had been subject to property tax upon acquisition by the state public retirement system," with the

_____

(A) the full cash value of the possessory interest, or (B), *if the lessee has leased less than all of the property, the lessee's allocable share of the full cash value of the property . . . .*" (§ 7510, subd. (b)(1), italics added.)

[8] Regardless of the BOE's longstanding doubt as to the constitutionality of section 7510, subdivision (b), as an administrative agency it lacks the power to declare a statute unconstitutional or to refuse to enforce a statute. (Cal. Const., art. III, § 3.5.)

17

lessee's allocable share based upon the lessee's percentage of "the total leasable square feet of the property." (*Ibid.*)

5. *Section 7510, subdivision (b), insofar as it requires a lessee to pay property tax on constitutionally exempt public owned real property, violates California Constitution article XIII, section 3(a).*

The constitutionality of section 7510, subdivision (b), an issue which has been dormant since 1992, is now squarely before this court.

The key constitutional provision for our purposes is article XIII, section 3(a) of the California Constitution, providing that "Property owned by the State" is exempt from property taxation. STRS, as a unit of the State and Consumer Services Agency, is a unit of state government performing a state function. (Ed. Code, § 22001; 68 Ops.Cal.Atty.Gen. 71.) Therefore, property owned by STRS is exempt from property tax.

The issue is the valuation of Kim's possessory interest, consisting of a portion of the retail space in the subject building owned by STRS. In this regard, section 7510 states in pertinent part at subdivision (b)(1): "The lease shall also provide that the full cash value, as defined in Sections 110 and 110.1 of the Revenue and Taxation Code, of the possessory interest upon which property taxes will be based shall equal the greater of (A) the full cash value of the possessory interest, or (B), *if the lessee has leased less than all of the property, the lessee's allocable share of the full cash value of the property that would have been enrolled if the property had been subject to property tax upon acquisition by the state public retirement system*." (Italics added.)

The County applied the valuation methodology of the statute. As set forth above in some detail (Factual & Procedural Background, *ante*, § 3(b)), the County valued Kim's possessory interest by taking Kim's percentage of the total leasable square footage of the building (3.317437 percent of the retail rentable square footage), and multiplying it by the Proposition 13 adjusted value of the building's overall retail space ($12,618,715),

18

thereby assessing Kim's leasehold interest at $418,618. Based on the assessed value, the County levied property tax against Kim in the amount of $4,983.34.[9]

The defect in this valuation methodology, which is prescribed by section 7510, subdivision (b)(1), is that is taxes property which is constitutionally exempt from taxation. The County allocated the entire valuation of the building to the various lessees, such as Kim, without any reduction for the value of the reversionary interest retained by STRS, the lessor, which owns the building in fee simple.

Further, the County made no adjustment for the fact that Kim's lease was winding down. As the BOE recognizes, absent special circumstances, a taxable possessory interest normally declines in value with each passing year. Here, however, the County assessed Kim's leasehold interest at $418,618, toward the end of the lease term, based on nothing more than STRS's acquisition price of the property in 1985, trended forward to 2006. Thus, Kim's assessment was based on the fee simple value of the property, rather than on the value of the possessory interest.

The vice in section 7510, subdivision (b)(1), is that it values tax exempt real property using the fee simple value of the property, and taxes the lessees based on the entire assessed value. California Constitution article XIII, section 3(a), exempts "[*p*]*roperty* owned by the State," rather than the State itself. (Italics added.) The reversionary interest in the subject real property is State-owned property and therefore is exempt from taxation. Section 7510, subdivision (b)(1) does not become constitutional simply because it shifts the tax on the reversionary interest to the lessees of STRS.

---

[9] The methodology the County utilized in assessing Kim's possessory interest was inconsistent with the methodology set forth on the Los Angeles County Assessor's website. (http://assessor.lacounty.gov/extranet/overview/possint.aspx.) The website states: "The valuation of possessory interests is different from other forms of property tax appraisal in two ways: [¶] 1. *Only the rights held by the private user are valued.* [¶] 2. *The Assessor must not include the value of the lessor's retained rights in the property or any rights that will revert back to the public owner (the 'reversionary interest') at the end of the lease. [¶] As a result, possessory interest assessments are frequently less than the assessments of similar privately-owned property.*" (*Ibid.*, italics added.)

19

We conclude that in order to satisfy article XIII, section 3(a), which exempts STRS's real property from taxation, the value of the rights retained by the exempt owner of the real property must be excluded in order to determine the proper valuation of Kim's taxable possessory interest.

The BOE Handbook, dealing with possessory interests generally, is mindful of these issues. [10] It states: "With a taxable possessory interest, since the underlying fee simple interest held by the public owner is almost always tax exempt, it is necessary to separately value the possessory interest held by the private possessor. (Handbook, *supra*, at p. 1.) The Handbook explains: "The valuation approaches for taxable possessory interests are similar to the conventional approaches to value – the comparative sales approach, the income approach, and the cost approach – that are generally accepted and used in the valuation of the fee simple interest. *However, the conventional approaches must be modified to accommodate the finite duration of a taxable possessory interest and the corresponding fact that a portion of the fee simple interest in those rights, the reversionary interest, is retained by the public owner and is nontaxable.*" (Handbook, *supra*, at p. 23, italics added.)

The BOE's regulation pertaining to the valuation of a taxable possessory interest in publicly owned real property, Property Tax Rule 21, also covers the point. The regulation states in pertinent part, "the fair market value of a taxable possessory interest is the fair market value of the fee simple absolute interest *reduced only by the value of the property rights, if any, granted by the public owner to other persons and by the value of the property rights retained by the public owner . . . .*" (18 Cal. Code Regs., § 21(b)(1), italics added.) The BOE's valuation method, applicable to possessory interests generally, prevents the lessee from being taxed on the value of the reversionary interest retained by

_____

[10] A court may properly consider the Handbook in determining the appropriate method of valuation. (*Carlson v. Assessment Appeals Bd. 1* (1985) 167 Cal.App.3d 1004, 1013.)

the public lessor, and therefore comports with California Constitution, article XIII, section 3(a).

6. *Section 7510(b)(1), by including the full value of the fee interest in the assessable value of the tenant's possessory interest, also violates the constitutional prohibition on taxing property in excess of its fair market value.*  (*Cal. Const., art. XIII, § 1.*)

Section 7510(b)(1) is constitutionally infirm not only because it taxes property which is exempt from taxation, but also because it taxes the lessee's possessory interest on an assessed value in excess of fair market value.

California Constitution article XIII, section 1 states:  "Unless otherwise provided by this Constitution or the laws of the United States:  [¶]  (a)  All property is taxable and shall be assessed at the same percentage of fair market value."

A "cardinal principle of property taxation is that property is ordinarily taxable at its 'fair market value.'  (Cal. Const., art. XIII, § 1; [Rev. & Tax. Code,] § 110.5.)" (*Prudential Ins. Co. v. City and County of San Francisco* (1987) 191 Cal.App.3d 1142, 1149.)  The term "fair market value" is defined by statute as "the amount of cash or its equivalent that property would bring if exposed for sale in the open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other, and both the buyer and the seller have knowledge of all of the uses and purposes to which the property is adapted and for which it is capable of being used, and of the enforceable restrictions upon those uses and purposes."  (Rev. & Tax. Code, § 110, sub. (a).)

Thus, Kim's possessory interest in STRS's building was taxable, but the correct standard for valuation of the possessory interest is fair market value, rather than the formula dictated by section 7510, subdivision (b)(1).

a.  *Proper valuation of fair market value of lessee's possessory interest requires exclusion of value of reversionary interest.*

With respect to the valuation of possessory interests in tax exempt property, we are guided by *De Luz, supra,* 45 Cal.2d 546.  That case involved a 562-unit housing

21

project built by De Luz, a private developer, on federal land at Camp Pendleton, a military installation in San Diego County. (*Id.* at p. 553.) The federal government leased a 95-acre parcel to De Luz for a period of 75 years. De Luz, at its own expense, constructed the buildings and leased the units at federally specified rents. (*Id.* at pp. 553-555.) De Luz's obligations included paying all taxes and assessments which were imposed " 'upon the Lessee with respect to or upon the leased premises.' " (*Id.* at p. 554.)

The *De Luz* court was presented with the issue of the valuation of the taxpayer's possessory interest in the federally owned tax exempt real property. (*De Luz, supra,* 45 Cal.2d at p. 561.) *De Luz* noted that possessory interests are not usually assessed for property tax purposes separately from the fee unless there is a need to do so, such as where the fee is exempt from taxation. (*Id.* at p. 563; see 1 Tax. Cal. Prop. § 3:7 (4th ed.).)

*De Luz* explained: "The Constitution requires not only that all nonexempt property be taxed [citations], but that except as otherwise specified all property be assessed by the same standard of valuation. . . . . [¶] Since nonexempt possessory interests in land and improvements, such as the leasehold estates involved in the present actions, are taxable property [citations], they too must be assessed at 'full cash value.' In practice, assessors usually enter the entire value of land and improvements on the tax roll without distinction between possessory and reversionary interests, and since this practice results in a single amount reflecting both interests on the roll, the constitutional mandate that all property be taxed is obeyed. [Citation.] As between reversioners and possessors payment of the tax is a private arrangement. [Citations.] *When, however, the possessory interest is taxable and the reversion is exempt, only the possessory interest is subject to assessment and taxation. [Citations.] 'When . . . there is a lease of land owned by the state or a municipality, the reversion being exempt from taxation, the*

22

*usufructuary*[11] *interest alone is subject to tax in proportion to its value*; and in the absence of agreement to the contrary, the tax necessarily falls upon the lessee.' [Citation.]"  (*De Luz, supra*, 45 Cal.4th at pp. 562-563, italics added, fn. omitted.)

Thus, *De Luz* teaches that in valuing the possessory interest of a private lessee in tax exempt publicly owned real property, only the possessory interest is subject to tax in proportion to its value.  Because the reversionary interest is exempt from taxation, its value must be excluded in determining the value of the possessory interest.

b.  *Proper standard for determining valuation of lessee's possessory interest is fair market value.*

As for the *method* of valuing the lessee's possessory interest, *De Luz* held: "In valuing property, the assessor must adhere to the statutory standard of 'full cash value,' and must therefore estimate the price the property would bring on an open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other. . . . . [¶]  *The standard of 'full cash value' applies equally to a leasehold interest.  Accordingly, the assessor must estimate the price a leasehold would bring on an open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other.*"  (*De Luz, supra*, 45 Cal.2d at p. 566.)

Section 7510, subdivision (b)(1) flies in the face of these principles.  It provides that for a property such as the instant building owned by STRS, where "the lessee has leased less than all of the property," the lessee's assessment is based on "the lessee's allocable share of the full cash value of the property that would have been enrolled if the property had been subject to property tax upon acquisition by the state public retirement system."  (§ 7510, subd. (b)(1).)  The lessee's allocable share is based on the lessee's proportionate share of the "the total leasable square feet of the property."  (*Ibid.*)  Thus, the statute disregards the lessee's constitutional right to be taxed purely on the value of the lessee's possessory interest.  Instead, the statute takes the full cash value of the

---

11      "Usufructary" denotes the right of enjoying a thing, the property of which is vested in another.  (Black's Law Dict. (5th ed. 1979) p. 1384.)

property, that is to say, both the possessory and reversionary interests, and allocates the entire value to the lessee – even though the lessee has nothing more than a possessory leasehold interest (the value of which normally declines with each passing year). Because the statute requires a fee simple valuation methodology, without reduction for the value of the property rights retained by the public owner, the valuation by definition does not represent the fair market value of the lessee's possessory interest.

We conclude section 7510, subdivision (b)(1), is facially unconstitutional (Cal. Const., art. XIII, § 1) because it allocates the entire value of the fee to lessees who merely hold a possessory interest in tax exempt real property. By allocating the entire value of the fee to the public entity's lessees, the statute requires the lessees to be taxed on a value in excess of the fair market value of the lessees' possessory interest.

7. *Remaining issues not reached*.

Having determined that section 7510, subdivision (b)(1), is facially unconstitutional because it fails to make a reduction for the value of property rights retained by the public lessor, we need not address STRS's argument that Kim's assessed value also should have been reduced to exclude the value of areas common to all tenants, such as parking structures, lobbies, elevators, hallways and restrooms. Likewise, it is unnecessary to reach STRS's argument that section 7510, subdivision (b)(1), violates California's equal protection clause (Cal. Const., art. I, § 7) by taxing similarly situated taxpayers in disparate ways with no rational basis, or any other issues.

## CONCLUSION

Section 7510, subdivision (b)(1), is facially unconstitutional insofar as it bases a lessee's assessment on the lessee's allocable share of the full cash value of the property, based on the lessee's percentage of the total leasable square feet of the property. Under the statute, the exempt remainder or reversionary interest, belonging to the public retirement system owner, is included in the assessment of the lessee's possessory interest. Therefore, the statute violates the prohibition against assessing property taxes on publicly owned real property (Cal. Const., art. XIII, § 3(a)), as well as the prohibition on assessing property in excess of its fair market value. (Cal. Const., art. XIII, § 1.)

24

## DISPOSITION

The judgment in favor of the County is reversed. The matter is remanded to the trial court with directions to remand the matter to the County Assessment Appeals Board to determine the proper value of Kim's leasehold interest, pursuant to the valuation principles promulgated by the BOE at 18 California Code of Regulations section 21, in accordance with the views expressed herein. STRS shall recover its costs on appeal.

**CERTIFIED FOR PUBLICATION**

KLEIN, P. J.

We concur:

CROSKEY, J.

KITCHING, J.